UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Enel Green Power North America, Inc., *et al.*,

Plaintiffs,

—v—

Geronimo Energy, LLC,

Defendant.



18-cv-5882 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

This litigation stems from a related arbitration proceeding (the "Arbitration") between Plaintiffs Enel Green Power North America, Inc. and Enel Kansas, LLC and Defendant Geronimo Energy, LLC currently pending with the American Arbitration Association. Plaintiffs, claimants in the Arbitration, seek in this Court a declaratory judgment, damages for breach of contract, and specific performance of indemnity obligations arising from Defendant's assertion of a counterclaim in the Arbitration (the "Arbitration Counterclaim"). Now before the Court is Plaintiffs' motion for judgment on the pleadings, as well as Defendant's motions to compel arbitration or, in the alternative, to dismiss and to amend its answer. For the reasons set forth below, Plaintiffs' motion is DENIED, Defendant's motion to compel arbitration or, in the alternative, to dismiss is DENIED, and Defendant's motion to amend its answer is GRANTED.

I.  **BACKGROUND**

On November 6, 2009, EGP Geronimo Holding Company, Inc. and Geronimo Wind Energy, LLC entered into a Project Investment Agreement by which Geronimo Wind Energy, a predecessor to Defendant, Am. Compl. ¶ 74; Second Am. Ans. ¶ 10, granted to EGP Geronimo Holding Company and its affiliates a first option to invest in Geronimo Wind Energy's projects.

The provision reads: "Geronimo hereby grants to [EGP Geronimo Holding Company and its affiliates], the right, but not the obligation, . . . to acquire from Geronimo 100% of the membership interests . . . in any and all respective Project Entities which own projects . . . ." Project Investment Agreement § 1.1 (Dkt. No. 40-2). By the terms of this agreement, Geronimo Wind Energy was "primarily responsible for performing all reasonable and necessary activities relating to the development of its wind energy projects . . . with the goal of having such projects meet [EGP Geronimo Holding Company's and its affiliates'] investment criteria." *Id.* Third Whereas Clause. At the same time, EGP Geronimo Holding Company and Geronimo Wind Energy also entered into a Membership Interest Purchase Agreement. Membership Interest Purchase Agreement (Dkt. No. 40-1). Plaintiffs characterize these transactions as initiating a "global deal" between "entities related to the parties in this action." Am. Compl. ¶ 73.

The Project Investment Agreement remained in effect until February 27, 2015, when it was terminated by a Termination agreement. Am. Compl. ¶ 82; Second Am. Ans. ¶ 11. Following the termination, Defendant and other entities were involved in several restructuring transactions, Second Am. Ans. ¶ 12, out of which Defendant, Geronimo Energy, LLC, and Plaintiff, Enel Minnesota Holdings, LLC ("Enel Minnesota Holdings"), were born, *see* Legacy Release Agreement Preamble (Dkt. No. 17-2). Defendant is a successor to Geronimo Wind Energy, and Plaintiff Enel Minnesota Holdings is affiliated with Plaintiffs Enel Green Power North America, Inc. and Enel Kansas, LLC. Contribution Agreement ¶ 1.1 (Dkt. No. 17-1).

Following the termination and restructuring, the two agreements at issue in this case—the Legacy Release Agreement and the Contribution Agreement—were executed. *See* Dkt. Nos. 17-1, 17-2.

2

A. **Relevant Provisions of the Governing Agreements**

1. **Legacy Release Agreement**

The Legacy Release Agreement was entered into by Defendant, GWE Legacy, LLC, and Plaintiff Enel Minnesota Holdings on March 24, 2015. It provides, in relevant part, that Defendant

> releases, acquits and forever discharges each Released Party of and from any and all manner of Claims which such Releasor Party ever had, now has, or hereafter may or shall have against any Released Party arising out of any matters, causes, acts, conduct, claims, circumstances or events occurring or failing to occur to the day of the date of this Agreement, other than the Retained Obligations.

Legacy Release Agreement § 2(a) (Dkt. No. 17-2). "Releasor Party" is defined to include Defendant, and "Released Party" includes

> [Enel Minnesota Holdings], its Affiliates and subsidiaries and each present or former director, officer, employee, managing member, or manager of any such Person, and each of their respective subsidiaries and Affiliates, attorneys, agents, representatives, trustees, and employees, and each of their respective heirs, executors, administrators, successors and assigns, in each case, excluding any Releasor Party.

*Id.* § 1. By the terms of this agreement, Defendant *does not* release claims arising out of the "Retained Obligations," which are defined as "(a) all obligations of any kind under the Option Documents, other than this Agreement, and (b) in the case of the New GWE Releasors, the Enel Post-Closing Obligations (as defined in the Contribution Agreement)." *Id.*

2. **Contribution Agreement**

The Contribution Agreement was entered into by Defendant's predecessor, New GWE, LLC, and Plaintiff Enel Minnesota Holdings' predecessor, Geronimo Wind Energy, LLC, on February 27, 2015. It provides, in relevant part, that Defendant's predecessor will assume certain liabilities of Plaintiff Enel Minnesota Holding's predecessor and "will indemnify, defend and hold harmless each GWE Indemnified Person for any and all Damages incurred by a GWE Indemnified Person to the extent based upon, arising from, with respect to, by reason of, or in

3

connection with . . . (ii) all Assumed Liabilities." Contribution Agreement § 4.1(a) (Dkt. No. 17-1). "GWE Indemnified Person" is defined as "(i) GWE, (ii) each Affiliate of GWE, and (iii) each Representative of GWE or any Affiliate of GWE, excluding in each case, from and after the Effective Time, New GWE, any Affiliate of New GWE, and any Representatives of GWE or any such Affiliate." *Id.* § 1.1. As such, GWE Indemnified Persons include Plaintiff Enel Minnesota Holdings, successor to Geronimo Wind Energy, as well as Plaintiffs Enel Green Power North American and Enel Kansas, which are affiliates of Enel Minnesota Holdings.

The liabilities assumed by Defendant's predecessor under this agreement include "all Liabilities under, based upon, arising from, with respect to, by reason of, or in connection with any Assumed Contract," which in turn are defined as "all Contracts of GWE [Plaintiff Enel Minnesota Holding's predecessor], in each case, excluding any Retained Assets, individually or collectively as the context requires." *Id.* Retained Assets are not at issue in this case.

Damages for which Defendant's predecessor, and therefore Defendant, must indemnify Plaintiffs under this agreement include

> all losses, Liabilities, Claims, damages, obligations, fines, payments, Actions, causes of action, assessments, judgments, amounts paid in settlement and other costs and expenses (including reasonable costs of investigation and defense and reasonable fees and expenses of legal counsel, accountants and other professional advisors) of any kind,

so long as such damages arise from the Assumed Liabilities. *Id.*

### B.     Procedural Background

This litigation was precipitated by the Arbitration Counterclaim, which was filed by Defendant in the Arbitration initiated by Plaintiff Enel Kansas prior to Plaintiffs filing this action. Am. Compl. ¶ 87; Second Am. Ans. ¶ 13. Plaintiff Enel Kansas initiated the Arbitration, claiming that it was entitled to a payment from Defendant under agreements related to a solar energy project called the "Aurora Project," which was developed while the "global deal"

4

between the parties remained in effect. Am. Compl. ¶¶ 85–86. They claim entitlement to this payment based on agreements related to the Aurora Project, including a Membership Interest Purchase Agreement entered into by Enel Kansas, Geronimo Wind Energy, and Aurora Distributed Solar, LLC on June 13, 2014. *See* Dkt. No. 17-3 at 11. Defendant then asserted the Arbitration Counterclaim, requesting that the demand for arbitration be dismissed and seeking further relief. *Id.* at 9. Count I of the Arbitration Counterclaim seeks relief for breach of a partnership agreement that allegedly existed between the parties during the time the "global deal" was in effect; Count II seeks relief for a breach of fiduciary duties allegedly owed to Defendant as Plaintiffs' partner; and Count III seeks relief for breaches of agreements related to the Aurora Project. *Id.* at 7–9.

Plaintiff initiated this action on June 29, 2018. The Complaint alleges that Defendant's assertion of the Arbitration Counterclaim breached the Release Agreement between the parties, whereby Defendant released Plaintiffs from the claims Defendant now asserts in the Arbitration Counterclaim, and triggered indemnity obligations under the Contribution Agreement between the parties, such that Defendant is now obligated to indemnify Plaintiffs for any damages, costs, and expenses related to Defendant's Arbitration Counterclaim. Dkt. No. 1. On August 20, 2018, Plaintiffs amended their complaint. Dkt. No. 17. Defendant then filed an answer with affirmative defenses on August 27, 2019, Dkt. No. 20, which it amended on August 28, 2018, Dkt. No. 21. Defendant moved to amend its answer once again on December 3, 2018. Dkt. No. 42. The Court hereby grants that motion, which is unopposed; the Second Amended Answer is therefore the operative answer in this matter. *See* Dkt. No. 44-1.

On October 24, 2018, Plaintiffs filed a motion for judgment on the pleadings, seeking a declaratory judgment that the Arbitration Counterclaim was released by the Legacy Release

5

Agreement, damages related to Defendant's alleged breach of the Legacy Release Agreement, and specific performance of indemnity obligations that exist under the Contribution Agreement. Dkt. No. 22. Defendant filed its opposition on November 21, 2018, Dkt. No. 37, and at the same time filed its own motion to compel arbitration or, in the alternative, to dismiss, Dkt. No. 39. Plaintiffs filed both their reply in further support of their motion for judgment on the pleadings, Dkt. No. 46, and their opposition to Defendant's motion to compel arbitration, or in the alternative, to dismiss, Dkt. No. 47, on December 7, 2018. Defendant filed its reply in further support of its motion to compel arbitration or, in the alternative, to dismiss, on December 14, 2018. Dkt. No. 49. On March 15, 2019, after these motions were fully briefed, Plaintiffs filed a letter with the Court to advise it that the arbitration panel dismissed Counts I and II of the Arbitration Counterclaim for lack of jurisdiction. *See* Dkt. Nos. 69, 69-1.

According to Plaintiffs, Defendant agreed in the Legacy Release Agreement to release Plaintiffs from any claims arising out of the Project Investment Agreement, any alleged partnership between the parties, and agreements related to the Aurora Project. Am. Compl. ¶¶ 121–135. Defendant, they argue, is in breach of that agreement and is thus barred from asserting the Arbitration Counterclaim. *Id.* Plaintiffs further allege that the Contribution Agreement, a second agreement between the parties by which Defendant assumed certain liabilities of Plaintiff Enel Minnesota Holdings, requires that Defendant indemnify Plaintiffs for any damages they incur arising from the Assumed Liabilities, including any damages, costs, and expenses related to the Arbitration Counterclaim. *Id.* ¶¶ 112–118.

## II. DISCUSSION

As a threshold matter, Plaintiffs' claims are properly before this Court. Plaintiffs state in their Opposition to Defendant's Motion to Compel Arbitration and to Stay, or in the Alternative,

Dismiss that they do not "at this time seek a ruling on Count III of the [Arbitration] Counterclaim because, as pled, it relates only to the Aurora [Membership Interest Purchase Agreement] dispute." *See* Dkt. No. 47 at 4 n.1. Thus, the Court construes references to Defendant's "counterclaims" in the Amended Complaint to refer only to Counts I and II of the Arbitration Counterclaim. As such, Plaintiffs' claims are properly before this Court because they are asserted under the Legacy Release and Contribution Agreements, which contain forum selection and choice of law clauses. Pursuant to these agreements, the parties have submitted themselves to the "exclusive jurisdiction" of New York state or federal courts and have agreed that any claims or causes of action arising out of these agreements will be "governed by the laws of the State of New York." Legacy Release Agreement § 5(a)-(b); Contribution Agreement § 5.8(a)-(b).

Contrary to Defendant's contentions, the existence of an earlier agreement related to the Aurora Project that subjects disputes between the parties to arbitration does not affect the propriety of this Court's deciding the merits of Plaintiffs' claims as construed. That agreement provides that "[a]ll disputes between the parties or any dispute arising between Parties under this Agreement" are subject to arbitration. Dkt. 17-3 at 12–13. However, Plaintiffs' claims do not relate to the Aurora Project; rather, they derive from Defendant's assertion of broad partnership and breach of fiduciary duty claims in the Arbitration Counterclaim and thus do not arise under the Aurora agreement. *See* Dkt. No. 17-3 at 7–9. And, to the extent the earlier agreement subjects "all disputes" between the parties to arbitration, "contracting parties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration." *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 524–25 (2d Cir. 2011). Where, as here, "an agreement contains a mandatory forum selection

clause that 'substantively exclude[s]' arbitration, it trumps an early agreement to arbitrate—even if it does not explicitly reference arbitration or nullify the earlier agreement." *Lynch v. Oliver*, 2016 WL 344980, at *2 (S.D.N.Y. Jan. 27, 2016), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Oliver*, 681 F. App'x 64 (2d Cir. 2017) (finding that a *mandatory* forum selection clause, "[b]y its plain and unambiguous terms," specifically precluded arbitration); *see also Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d 435, 440–444 (S.D.N.Y. 2013), *aff'd*, 764 F.3d 210 (2d Cir. 2014). The Legacy Release and Contribution Agreements, which both contain mandatory forum selection clauses by which the parties subject themselves to the exclusive jurisdiction of the state and federal courts of New York, plainly preclude arbitration of the claims at issue in this case and supplant any prior agreements to the contrary.

Furthermore, the arbitration panel itself concurs with this conclusion. *See* Dkt. No. 69-1 at 5 (finding that the Legacy Release Contribution Agreements "specifically submit any disputes under them to the 'exclusive jurisdiction of any State or Federal Court in New York'" and thus the courts of New York "have exclusive jurisdiction" over questions related to Counts I and II of the Arbitration Counterclaim). For these reasons, Defendant's Motion to Compel Arbitration is DENIED.

### A. Plaintiffs' Motion for Judgment on the Pleadings

#### 1. Standard

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are subject to the same standard applicable to Rule 12(b)(6) motions to dismiss. *See Bank of New York v. First Millennium, Inc.*,

8

607 F.3d 905, 922 (2d Cir. 2010). "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). A complaint is also "deemed to include any . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.* (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

The Court must "accept[] all of the non-movant's factual allegations as true and draw[] all reasonable inferences in the non-movant's favor." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989) ("In evaluating a Rule 12(c) motion, the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party."). As such, a party moving for judgment on the pleadings "impliedly admits the truth of its adversary's allegations and the falsity of its own assertions that have been denied by that adversary." *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 427 (S.D.N.Y. 2013) (quoting Fed. Prac. & Proc. § 1370). "Where Defendant has not admitted a fact and Plaintiff has not proven it through other means, the Court reads the absence of that information in the light most favorable to Defendant. In other words, for purposes of [a] motion for judgment on the pleadings, the Court will not assume that facts favor Plaintiff where there is simply no undisputed evidence about those facts based on the pleadings." *Id.* at 435–36.

Applying these standards here, the Court will assume that the denials and allegations in Defendant's answer are true, as Defendant is the non-moving party. *See Beal v. Missouri Pac. R.*

*R. Corp.*, 312 U.S. 45, 51 (1941) ("Upon such a motion[,] denials and allegations of the answer which are well pleaded must be taken as true."). However, as is the case on a Rule 12(b)(6) motion, "'[t]hreadbare recitals . . . supported by mere conclusory statements,' are not entitled to the assumption of truth . . . [on] a motion for a judgment on the pleadings." *Mazzeo v. Mnuchin*, 2017 WL 2817083, at *3 (S.D.N.Y. June 29, 2017), *aff'd*, 751 F. App'x 13 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). In other words, "a party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Gioconda Law Grp.*, 941 F. Supp. 2d at 426–27 (quoting *Bailey v. Pataki*, 2010 WL 234995, at *1 (S.D.N.Y. Jan. 19, 2010)).

### 2. Legacy Release Agreement Claims

Plaintiffs argue that they are entitled, as a matter of law, to a judgment declaring that the Legacy Release Agreement bars the claims asserted by Defendant in the Arbitration Counterclaim and that this Court can similarly resolve its breach of the Legacy Release claim on the pleadings. For the reasons stated below, Plaintiffs are wrong on both counts.

At bottom, the parties' dispute is one of contract interpretation. New York law governs claims arising out of both agreements at issue. Legacy Release Agreement § 5(a); Contribution Agreement § 5.8(a). "Under New York law, the initial interpretation of a contract is a matter of law for the court to decide." *Ortegon v. Giddens*, 638 F. App'x 47, 49 (2d Cir. 2016) (citation

and quotation marks omitted); *see also Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).

The Legacy Release Agreement states that the Releasor Party—Defendant—"releases, acquits and forever discharges each Released Party"—which includes all Plaintiffs—of "all manner of claims" arising on or prior to March 24, 2015, the date of the agreement, *with the exception of* those arising out of the Retained Obligations. Legacy Release Agreement § 2(a); *see also* Contribution Agreement § 1.1. The Retained Obligations include all obligations arising out of the Option Documents and the Enel Post-Closing Obligations, as defined in the Contribution Agreement.

While Plaintiffs allege that the "Retained Obligations" do not include "the Project Investment Agreement, the alleged 'partnership agreement' (to the extent that it exists), the Aurora Contracts, nor any related conduct, circumstances, or claims," Am. Compl. ¶ 108, and as such the claims asserted in the Arbitration Counterclaim were released by this agreement, Defendant denies this allegation. Second Am. Ans. ¶ 17. This dispute over what the Retained Obligations encompass is ultimately a question of contract interpretation to be resolved by this Court as a matter of law in the first instance. *See Ortegon*, 638 F. App'x at 49. However, all of the Option Documents are not before the Court and, as a result, the Court cannot now say that the claims asserted in Counts I and II of the Arbitration Counterclaim were released by the Legacy Release Agreement as a matter of law. Thus, while Plaintiffs' argument that Defendant has released the claims it now asserts in the Arbitration Counterclaim may have merit, the Court cannot resolve the issue at this juncture because a judgment on the merits is not possible "merely by considering the contents of the pleadings." *Sellers*, 842 F.2d at 642.

The Court likewise cannot resolve Plaintiffs' breach of the Legacy Release Agreement claim on the pleadings because Defendant is only in breach of the Legacy Release Agreement *if* it asserted claims in the Arbitration that were barred by that agreement—an issue the Court cannot now resolve for the reasons stated above. Accordingly, Plaintiffs' motion for judgment on the pleadings is DENIED with respect to Counts II and III of their Amended Complaint.

### 3. Contribution Agreement Claim

Plaintiffs also assert that they are entitled to specific performance of indemnity obligations under the Contribution Agreement as a matter of law. A party is entitled to specific performance of a contractual provision where "(1) a valid contract exists between the parties, (2) the plaintiff has substantially performed its part of the contract, and (3) plaintiff and defendant are each able to continue performing their parts of the agreement." *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 433 (2d Cir. 1993). While a party is not usually entitled to specific performance unless the Court also finds that there is no adequate remedy at law, "[w]hen specific performance is contemplated by the contract," as it is here, "courts tend to find that irreparable harm would be suffered unless specific performance is granted." *Wells Fargo Bank, N.A. v. Bank of Am., N.A.*, 2013 WL 372149, at *8 (S.D.N.Y. Jan. 31, 2013); Contribution Agreement § 5.9.

Pursuant to the Contribution Agreement, Defendant must indemnify Enel Minnesota Holdings and its affiliates, which include the other Plaintiffs in this case, for Damages, including the reasonable costs of defense and reasonable fees and expenses of legal counsel, arising from any Assumed Liabilities. Contribution Agreement § 4.1(a); *see also id.* § 1.1. Assumed Liabilities include *all* contracts of Enel Minnesota's predecessor, excluding the Retained Assets, which are not relevant here. *Id.* § 1.1. For the purposes of this motion, the Court assumes that

the alleged partnership agreement that forms the basis of Defendant's Arbitration Counterclaim is an Assumed Liability.[1] The agreement contains both a third-party indemnity provision, *id.* § 4.3, and a direct indemnity provision, *id.* § 4.4, which by its very nature extends to "claims between the contracting parties," such as the claim asserted by Plaintiffs in this litigation, *Luna v. Am. Airlines*, 769 F. Supp. 2d 231, 244 (S.D.N.Y. 2011); *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 178–79 (2d Cir. 2005).

Though Plaintiffs' claims that they are entitled to specific performance under the Contribution Agreement may have merit, they are not entitled to such relief as a matter of law at this juncture. Defendant does not contest the validity of the Contribution Agreement, Second Am. Ans. ¶ 16, but it does dispute that Plaintiffs performed under it, *see* Am. Comp. ¶ 115; Second Am. Ans. ¶ 19. Because a material fact is disputed, a judgment on the merits ordering specific performance of indemnity obligations is not possible "merely by considering the contents of the pleadings." *Sellers*, 842 F.2d at 642. Accordingly, Plaintiffs' motion for a judgment on the pleadings is DENIED with respect to Count I of their Amended Complaint.

### B. Defendant's Motion to Dismiss

As previously mentioned, motions for judgment on the pleadings are subject to the same standard applicable to Rule 12(b)(6) motions to dismiss. However, the presumptions outlined above must be reversed when considering Defendant's motion to dismiss. To this point, the Court has accepted Defendant's denials and allegations as true and drawn all reasonable inferences in its favor as the non-moving party. Conversely, on a motion to dismiss, the Court

---

[1] The Court assumes for purposes of this motion that the alleged partnership agreement is an Assumed Liability but notes the internal inconsistency in Plaintiffs asserting that the agreement *does not exist*, *see* Dkt. No. 46 at 3, while at the same time claiming that it is an Assumed Liability that triggers indemnity obligations under the Contribution Agreement, *see* Dkt. No. 23 at 7.

must accept Plaintiffs' complaint as true and draw all reasonable inferences in their favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Though Plaintiffs are not entitled to a judgment on the pleadings, their Amended Complaint states claims for relief that are plausible on their faces. Reversing the presumptions applied above and drawing all reasonable inferences in Plaintiffs' favor, it is plausible for reasons already stated that the Legacy Release Agreement bars the Arbitration Counterclaim, such that Defendant's assertion of that counterclaim breached the agreement. It is likewise plausible that Plaintiffs are entitled to specific performance of indemnity obligations in the Contribution Agreement. Defendant's motion to dismiss Plaintiffs' Amended Complaint is thus DENIED.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for judgment on the pleadings is DENIED. Plaintiffs' request for oral argument on its motion is also DENIED. Defendant's motion to compel arbitration or, in the alternative, to dismiss is DENIED, and Defendant's motion to amend its answer is GRANTED. Within seven days of the date of this Opinion and Order, the parties shall meet and confer and submit a proposed amended Civil Case Management Plan and Scheduling Order proposing a schedule for completing the remaining discovery in this matter. This resolves Dkt. Nos. 22, 38, 42, and 48.

SO ORDERED.

Dated: September 30, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge